# Exhibit A

# Cryptocurrency Purchase / Sale Agreement

**Business or Individual**

Individual

**Fictitious Business Name (DBA)**

**First Name**

Joseph

**Middle Name**

Michael

**Last Name**

Union

**Enter your email**

josephunion2@bejans.com

**Enter your phone number**

+1 (559) 816-2625

**Residential Address**

201 NORWOOD AVE NE

**City**

Atlanta

**State**

GA

**Zip code**

30317

**Purchase Amount (Required $USD 15,000 min)**

$ 145000

**Monthly Purchase Estimate (Required $USD 15,000 min)**

$ 50000

**Source of Funds**

Investments

**Occupation**

Retired MD

**Purpose of Purchase**

Investment

**Date of Birth**

07/26/1944

**Social Security Number**

▇▇▇▇▇3278

**Please upload a clear, no glare picture of your Identification (i.e. Drivers License, Passport or Government issued ID)**

id front.jpg
113.28 KB

**Please upload a selfie of you holding the ID uploaded above**

selfie of me with id.jpg
160.11 KB

**ID number (from ID uploaded above)**

▇▇▇▇5857

**ID Expiration Date**

08/04/2026

**Are there any beneficial owner(s) with more than 25% interest in the Business?**

No

**Proof of Residence (current utility bill)**

GAS BILL.pdf
1.11 MB

**Primary Bank Name**

CHARLES SCHWAB

**Bank Street Address**

211 Main St.



## Agreement

CRYPTOCURRENCY PURCHASE AGREEMENT

**This CRYPTOCURRENCY PURCHASE AGREEMENT (this "Agreement"), is made and entered into on:**



09/13/2021

This "Agreement", is made and entered into by and between Westcliff Technologies, Inc., a California corporation having a business address at: 237 A St. #10101 San Diego, CA 92101 ("Clearblock"), and the "Counterparty"(name entered below as "Counterparty Name"), whose address is submitted above as "Primary State of Residence Street Address" and together with Clearblock, the "Parties" and each a "Party").

**Counterparty Name:**

> JOSPEH MICHAEL UNION

WHEREAS, the Parties desire to enter into periodic Purchase Orders for the purchase and sale of cryptocurrency as set forth herein and therein. NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

# ARTICLE I.

SALE AND PURCHASE OF THE PURCHASED CRYPTOCURRENCY Section 1.1 Purchase Orders. During the term of this Agreement and at such times as mutually agreed by the Parties, the Counterparty or Clearblock may submit a Purchase Order to Clearblock or the Counterparty via email and the party receiving the Purchase Order shall have ten minutes (the "Review Period") to confirm such Purchase Order via email after which Review Period such Purchase Order shall be deemed to be rejected and expired. Section 1.2 Purchase and Sale. (a) On each Settlement Date, Counterparty or Clearblock, as the case may be, will sell, transfer and deliver the Clearblock Purchased Cryptocurrency or the Counterparty Purchased Cryptocurrency, respectively, as specified in a Purchase Order, to the other party, and such purchaser will purchase all of the other party's right, title and interest in and to such cryptocurrency from the seller. (b) Promptly following confirmation of each Purchase Order in accordance with Section 1.1 (i) if Counterparty is purchasing the Counterparty Purchased Cryptocurrency from Clearblock, then Counterparty shall deliver or shall direct its agents or designees to deliver, the Counterparty Purchase Price to Clearblock by transfer of immediately available funds or cryptocurrencies on the applicable Cryptocurrency Network to Clearblock's applicable location, wallet, address, account or storage device designated in Exhibit A attached hereto (each a "Clearblock Wallet") or (ii) if Clearblock is purchasing the Clearblock Purchased Cryptocurrency from Counterparty, then Counterparty shall deliver, or shall direct its agents or designees to deliver, the Clearblock Purchased Cryptocurrency to Clearblock by transfer of immediately available cryptocurrencies on the applicable Cryptocurrency Network to the applicable Clearblock Wallet. (c) Promptly following payment of the Counterparty Purchase Price or transfer of the Clearblock Purchased Cryptocurrency by Counterparty, as set forth in Section 1.2(b) herein, (i) if Counterparty is purchasing the Counterparty Purchased Cryptocurrency from Clearblock, then Clearblock shall deliver, or shall direct its agents or designees to deliver, the Counterparty Purchased Cryptocurrency to Counterparty by transfer of immediately available cryptocurrencies on the applicable Cryptocurrency Network to Counterparty's applicable location, wallet, address, account or storage device designated in Exhibit B attached hereto (each a "Counterparty Wallet") or (ii) if Clearblock is purchasing the Clearblock Purchased Cryptocurrency from Counterparty, then Clearblock shall deliver or shall direct its agents or designees to deliver, the Clearblock Purchase Price to Counterparty by transfer of immediately available funds or cryptocurrencies on the applicable Cryptocurrency Network the applicable Counterparty Wallet. (d) In the event a Purchase Order is not settled by the Settlement Date, Clearblock shall have the right to terminate such Purchase Order in Clearblock's sole discretion. Section 1.3 Term. This Agreement shall remain in effect until terminated in writing by either P

# ARTICLE II.

DEFINITIONS Section 2.1 In addition to the capitalized terms defined elsewhere in this Agreement, the following capitalized terms shall have the meanings specified in this Article II: "Cryptocurrency Network" shall mean the peer-to-peer computer network that governs the transfer of the applicable cryptocurrency. "Counterparty Purchased Cryptocurrency" shall mean the number and type of cryptocurrency Counterparty is obligated to purchase from Clearblock pursuant to a Purchase Order. "Counterparty Purchase Price" shall mean the price per applicable cryptocurrency set forth in a Purchase Order multiplied by the number of Counterparty Purchased Cryptocurrency set forth in such Purchase Order. "Clearblock Purchased Cryptocurrency" shall mean the number and type of cryptocurrency Clearblock is obligated to purchase from Counterparty pursuant to a Purchase Order. "Clearblock Purchase Price" shall mean the price per applicable cryptocurrency set forth in a Purchase Order multiplied by the number of Clearblock Purchased Cryptocurrency set forth in such Purchase Order. "Foreign Bank" shall mean an organization that (i) is organized under the laws of a foreign country, (ii) engages in the business of banking, (iii) is recognized as a bank by the bank supervisory or monetary authority of the country of its organization or principal banking operations, (iv) receives deposits to a substantial extent in the regular course of its business, and (v) has the power to accept demand deposits, but does not include the U.S. branches or agencies of a foreign bank. "Foreign Shell Bank" shall mean a Foreign Bank without a Physical Presence in any country, but does not include a regulated affiliate. "Non-Cooperative Jurisdiction" shall mean any country or territory that has been designated as non-cooperative with international anti-money laundering principles or procedures by an intergovernmental group or organization, such as the Financial Action Task Force on Money Laundering ("FATF"), of which the United States is a member and with which designation the United States representative to the group or organization continues to concur. See http://www.fatf-gafi.org for FATF's list of non-cooperative countries and territories. "OFAC" shall mean the United States Office of Foreign Assets Control. The lists of OFAC prohibited countries, territories, persons and entities can be found on the OFAC website at http://www.treas.gov/offices/enforcement/ofac/. "Person" shall mean any individual, corporation, partnership, association, limited liability company, trust, estate or other entity, either individually or collectively. "Physical Presence" shall mean a place of business that is maintained by a Foreign Bank and is located at a fixed address, other than solely a post office box or an electronic address, in a country in which the Foreign Bank is authorized to conduct banking activities, at which location the Foreign Bank (i) employs one or more individuals on a full-time basis, (ii) maintains operating records related to its banking activities, and (iii) is subject to inspection by the banking authority that licensed the Foreign Bank to conduct banking activities. "Purchase Order" shall mean each email confirmation sent by Counterparty or Clearblock, as the case may be, duly confirmed by Counterparty or Clearblock, as applicable, before the end of the Review Period as set forth in Section 1.1 herein and incorporated herein by reference, setting forth, among other things, the number of Counterparty Purchased Cryptocurrency or the number of Clearblock Purchased Cryptocurrency, the price per applicable cryptocurrency and the Counterparty Purchase Price or the Clearblock Purchase Price, in substantially the form attached hereto as Exhibit C. "Settlement Date" shall mean the date of each Purchase Order.

## ARTICLE III.

REPRESENTATIONS AND WARRANTIES Section 3.1 Clearblock represents and warrants to Counterparty, as of the date hereof and on each Settlement Date: (a) Clearblock is a corporation duly organized, validly existing and in good standing under the laws of the State of California. Clearblock has all necessary limited liability company power and authority to enter into this Agreement, to carry out its obligations hereunder and to consummate the transactions contemplated hereby. The execution and delivery by Clearblock of this Agreement, the performance by Clearblock of its obligations hereunder and the consummation by Clearblock of the transactions contemplated hereby have been duly authorized by all requisite company action on the part of Clearblock. (b) This Agreement has been duly executed and delivered by Cearblock and (assuming due authorization, execution and delivery by Counterparty), this Agreement constitutes a valid and legally binding obligation of Clearblock, enforceable against Clearblock in accordance with its terms, except as limited by applicable bankruptcy, insolvency, reorganization, moratorium, fraudulent conveyance, and any other laws of general application affecting enforcement of creditors' rights generally. (c) Neither the execution and delivery of this Agreement, nor the consummation of the transactions contemplated hereby, does or will violate any statute, regulation, rule, judgment, order, decree, ruling, charge or other restriction of any government, governmental agency, or court to which Clearblock is subject or conflict with, violate or constitute a default under any agreement, debt or other instrument to which Clearblock is a party. (d) Neither Clearblock, nor any Person who controls Clearblock or any Person for whom Clearblock is acting as an agent or nominee, as applicable (1) bears a name that appears on the List of Specially Designated Nationals and Blocked Persons maintained by OFAC from time to time; (2) is a Foreign Shell Bank; or (3) resides in or whose subscription funds are transferred from or through an account in a Non-Cooperative Jurisdiction. (e) With respect to any Counterparty Purchased Cryptocurrency, Clearblock sells, transfers and delivers to Counterparty under any Purchase Order, Clearblock is the lawful owner of such Counterparty Purchased Cryptocurrency with good and marketable title thereto, and Cleartblock has the absolute right to sell, assign, convey, transfer and deliver such Counterparty Purchased Cryptocurrency. Such Counterparty Purchased Cryptocurrency is free and clear of any and all security interests, liens, pledges, claims (pending or threatened), charges, escrows, encumbrances or similar rights. (f) Clearblock is the lawful owner of each Clearblock Wallet, and has good title thereto. Each Clearblock Wallet is owned and operated solely for the benefit of Clearblock, and no Person, other than Cleartblock, has any right, title or interest in any Clearblock Wallet. Section 3.2 Counterparty hereby represents and warrants to Clearblock, as of the date hereof and on each Settlement Date: (a) Counterparty is an individual residing at address submitted above as "Primary State of Residence Street Address" Counterparty has all necessary power and authority to enter into this Agreement, to carry out its obligations hereunder and to consummate the transactions contemplated hereby. (b) This Agreement has been duly executed and delivered by Counterparty and (assuming due authorization, execution and delivery by Clearblock), this Agreement constitutes a valid and legally binding obligation of Counterparty, enforceable against Counterparty in accordance with its terms, except as limited by applicable bankruptcy, insolvency, reorganization, moratorium, fraudulent conveyance, and any other laws of general application affecting enforcement of creditors' rights generally. (c) Neither the execution and delivery of this Agreement, nor the

consummation of the transactions contemplated hereby, does or will violate any statute, regulation, rule, judgment, order, decree, ruling, charge or other restriction of any government, governmental agency, or court to which Counterparty is subject or conflict with, violate or constitute a default under any agreement, debt or other instrument to which Counterparty is a party. (d) Neither Counterparty, nor any Person for whom Counterparty is acting as an agent or nominee, as applicable (1) bears a name that appears on the List of Specially Designated Nationals and Blocked Persons maintained by OFAC from time to time; (2) is a Foreign Shell Bank; or (3) resides in or whose subscription funds are transferred from or through an account in a Non-Cooperative Jurisdiction. (e) With respect to any Clearblock Purchased Cryptocurrency, Counterparty sells, transfers and delivers to Clearblock under any Purchase Order, Counterparty is the lawful owner of such Clearblock Purchased Cryptocurrency with good and marketable title thereto, and Counterparty has the absolute right to sell, assign, convey, transfer and deliver such Clearblock Purchased Cryptocurrency. Such Clearblock Purchased Cryptocurrency is free and clear of any and all security interests, liens, pledges, claims (pending or threatened), charges, escrows, encumbrances or similar rights. (f) Counterparty is the lawful owner of each Counterparty Wallet, and has good title thereto. Each Counterparty Wallet is owned and operated solely for the benefit of Counterparty, and no Person, other than Counterparty, has any right, title or interest in any Counterparty Wallet. (g) Counterparty agrees, understands and acknowledges that (i) Clearblock engages in the bilateral purchase and sale of cryptocurrencies, including any such transaction contemplated by this Agreement, solely on a proprietary basis for investment purposes for its own account; (ii) if Clearblock transacts with Counterparty it does so solely on a bilateral basis; and (iii) Clearblock is not providing and will not provide any fiduciary, advisory, exchange or other similar services with respect to Counterparty, any person related to or affiliated with Counterparty, or any transaction subject to this Agreement. Counterparty further agrees, represents and warrants that (x) Counterparty is solely responsible for any decision to enter into a transaction subject to this Agreement, including the evaluation of any and all risks related to any such transaction; and (y) in entering into any such transaction, Counterparty has not relied on any statement or other representation of Clearblock other than as expressly set forth herein.

## ARTICLE IV.

MISCELLANEOUS Section 4.1 Intentionally omitted. Section 4.2 Amendments; Waivers. The provisions of this Agreement may be amended only if the other Party has consented in writing to such amendment, action or omission. No such consent with respect to any such action or omission shall operate as a consent to, waiver of, or estoppel with respect to, any other or subsequent action or omission. No failure to exercise and no delay in exercising any right, remedy or power hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, remedy or power hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy or power provided herein or by law or at equity. Section 4.3 Assignment; Successors and Assigns. This Agreement shall be binding on and inure to the benefit of the Parties and their respective successors, heirs, personal representatives, and permitted assigns. Counterparty may not assign or delegate its rights or obligations hereunder without the prior written consent of Clearblock, which may be withheld in Clearblock's sole discretion. Section 4.4 Severability. Whenever possible, each provision of this Agreement will be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be prohibited by or invalid under applicable law, such provision will be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of this Agreement. Section 4.5 Descriptive Headings and Construction. The descriptive headings of this Agreement are inserted for convenience only and do not constitute a part of this Agreement. Unless otherwise indicated, references to Articles and Sections herein are references to Articles and Sections of this Agreement. Section 4.6 Governing Law. This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of California, without giving effect to the principles of conflicts of law thereof. Any controversy, claim or dispute arising out of or relating to this Agreement or the breach thereof shall be settled solely and exclusively by binding arbitration in San Diego, CA administered by JAMS. Such arbitration shall be conducted in accordance with the then prevailing JAMS Streamlined Arbitration Rules & Procedures, with the following exceptions to such rules if in conflict: (a) one arbitrator shall be chosen by JAMS; (b) each Party to the arbitration will pay an equal share of the expenses and fees of the arbitrator, together with other expenses of the arbitration incurred or approved by the arbitrator; and (c) arbitration may proceed in the absence of any Party if written notice (pursuant to the JAMS' rules and regulations) of the proceedings has been given to such Party. Each Party shall bear its own attorneys' fees and expenses. The Parties agree to abide by all decisions and awards rendered in such proceedings. Such decisions and awards rendered by the arbitrator shall be final and conclusive. All such controversies, claims or disputes shall be settled in this manner in lieu of any action at law or equity. IF FOR ANY REASON THIS ARBITRATION CLAUSE BECOMES NOT APPLICABLE THEN EACH PARTY, (i) TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, HEREBY IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY AS TO ANY ISSUE RELATING HERETO IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OTHER MATTER INVOLVING THE PARTIES, AND (ii) SUBMITS TO THE EXCLUSIVE JURISDICTION AND VENUE OF THE FEDERAL OR STATE COURTS LOCATED IN SAN DIEGO COUNTY, CALIFORNIA AND EACH PARTY AGREES NOT TO INSTITUTE ANY SUCH ACTION OR PROCEEDING IN ANY OTHER COURT IN ANY OTHER JURISDICTION. Each Party irrevocably and unconditionally waives any objection that it may now or hereafter have to the laying of

venue of any action or proceeding arising out of or relating to this Agreement in the courts referred to in this Section 4.6. Section. 4.7 Confidentiality. Each of Clearblock and Counterparty hereby agrees to not disclose, and to otherwise keep confidential, the transactions contemplated hereby, the existence or nature of any relationship between the Parties, the name of the other Party or the fact that the Parties engaged in any transaction ("Confidential Information"), provided, however, that each Party may disclose Confidential Information to its directors, officers, members, employees, agents, affiliates, and professional advisers or to financial institutions providing services to a Party in connection with any applicable anti-money laundering or compliance requirements. If either Party is required by law, rule or regulation, or advised by legal counsel to disclose such information (the "Required Party"), the Required Party will, to the extent legally permissible, provide the other Party (the "Subject Party") with prompt written notice of such requirement so that such Subject Party may seek an appropriate protective order or waive compliance with this Section 4.7. The Subject Party shall promptly respond to such request in writing by either authorizing the disclosure or advising of its election to seek such a protective order, or, if such Subject Party fails to respond promptly, such disclosure shall be deemed approved. The confidentiality obligations set forth in this Section 4.7 shall survive the termination or expiration of this Agreement. Section 4.8 Entire Agreement. This Agreement and each Purchase Order executed on or after the date hereof contain the entire agreement among the Parties with respect to the subject matter hereof and supersede all prior agreements and understandings, written or oral, among the Parties with respect thereto. Section 4.9 Counterparts. This Agreement may be executed in one or more counterparts, each of which when so executed and delivered shall be an original, but all such counterparts taken together shall constitute one and the same instrument. Transmission by telecopy, email or other form of electronic transmission of an executed counterpart of this Agreement shall be deemed to constitute due and sufficient delivery of such counterpart. Section 4.10 Notices, Consents, etc. Any notices, consents or other communications required or permitted to be sent or given hereunder by either of the Parties shall in every case be in writing and shall be deemed properly served if (i) delivered personally, (ii) sent by registered or certified mail, in all such cases with first class postage prepaid, return receipt requested, (iii) delivered by a recognized overnight courier service or (iv) sent via email, to the Parties, at the addresses as set forth below or at such other addresses as may be furnished in writing. (a) If to: Clearblock, to: Westcliff Technologies, Inc., 237 A St. #10101 San Diego, CA 92101. Date of service of such notice shall be (w) the date such notice is personally delivered or sent by email, (x) three (3) business days after the date of mailing if sent by certified or registered mail, or (y) one (1) business day after date of delivery to the overnight courier if sent by overnight courier. Section 4.11 No Third Party Beneficiary. The terms and provisions of this Agreement are intended solely for the benefit of each Party and their respective successors or permitted assigns, and it is not the intention of the Parties to confer third-party beneficiary rights upon any other Person.

**Counterparty is the lawful owner of each Counterparty Wallet, and agrees to the following**

 has good title thereto

☑ Each Counterparty Wallet is owned and operated solely for the benefit of Counterparty, and no Person, other than Counterparty,

**Counterparty has read and agrees to the terms and conditions of the "CRYPTOCURRENCY PURCHASE AGREEMENT" above**

☑ Yes

# IN WITNESS WHEREOF

the Parties have caused this Agreement to be executed as of the date first above written.

**Clearblock:**
**Westcliff Technoligies, Inc.**

**COUNTERPARTY:**



Verified by airSlate inc.

JOSEPH M. UNION

A3E6F0CE-B000006F

**Head of OTC Trading**

Eli LeWitt

**Counterparty Full Legal name**

JOSEPH MICHAEL UNION

**Signature Date**

**Signature Date**

📅 09/13/2021